# UNITED STATES DISTRICT COURT
for the
Middle District of North Carolina

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>111 Morgan Road<br>Winston-Salem, North Carolina | ) ) ) ) ) ) Case No. 1:19mj78 |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
See Attachment A

located in the ___Middle___ District of ___North Carolina___, there is now concealed *(identify the person or describe the property to be seized)*:
See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☑ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC 841 (a)(1) | Possession with Intent to Distribute Methamphetamine |
| 21 USC 841 (a)(1) | Possession with Intent to Distribute a controlled Substance |

The application is based on these facts:
See attached affidavit

☑ Continued on the attached sheet.
☐ Delayed notice of ____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*E. M. Branson*
Applicant's signature

Elizabeth Branson, Task Force Officer-ATF
Printed name and title

Sworn to before me and signed in my presence.

Date: 03/01/19

Judge's signature

City and state: Winston-Salem, North Carolina        L. Patrick Auld, United States Magistrate Judge
Printed name and title

## Attachment A

**Place to be searched:**

111 Morgan Road, Winston-Salem, North Carolina. A one-story vinyl sided home, with a grey, shingled roof, with a carport located on the west side of the residence, and a front porch that leads to the front door

111 Morgan Road

Winston-Salem, North Carolina

# ATTACHMENT B

All documents, records, and other materials relating to violations of Title 21, United States Code § 841(a)(1) in the form of:

1. Books, records, receipts, notes and ledgers, reflecting to the importation, transportation, ordering, purchases and distribution of controlled substances;

2. All records and other documents evidencing the possession, shipment, tracking and delivery of illegal controlled substances.

3. Indicia of occupancy, residency, and ownership or use of the subject premises, including utility and telephone bills, mail, envelopes, rental, purchase or lease agreements, identification documents and keys.

4. Address and/or telephone books, contact lists, and any papers or records reflecting names, addresses, telephone numbers, sources of drug supply or drug customers.

5. Controlled substances and drug paraphernalia, including weighing scales and packaging materials.

6. U.S. Currency.

7. All personal and corporate property records and vehicle records showing proof of ownership.

8. Firearms, ammunition, and firearms accessories;

9. Photographs or other video images depicting drug related activity or possession of firearms;

10. Since certain documents may be maintained electronically, this search warrant specifically authorizes the seizure of computers, hard drives, and any other device or equipment capable of

storing data or text in any format, and any other storage media capable of containing data or text in magnetic, electronic, optical, digital, analog, or any other format.

# AFFIDAVIT IN SUPPORT OF APPLICATION

I, Elizabeth Branson, Task Force Officer, Bureau of Alcohol, Tobacco, Firearms and Explosive (ATF), Greensboro, North Carolina, being duly sworn, depose and state as follows:

1. I am a Task Force Officer with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), and have been for approximately two years, as well as a Police Officer with the Winston-Salem Police Department, and have been for over 17 years. Your affiant has received local, state and federal training in the identification and investigation of narcotics. Furthermore, your affiant has made and assisted with more than 200 arrests for narcotic related violations at both the state and federal levels.

2. This affidavit is submitted in support of an application for a search warrant for the residence located at 111 Morgan Road, Winston-Salem, North Carolina; and located within the Middle District of North Carolina.

3. This has been an ongoing investigation since October 2018. The information contained in this affidavit is based upon information provided by other ATF special agents, ATF task force officer, and other federal, state and local law enforcement officers, public source documents such as police reports, telephone toll analysis, physical surveillance and my own personal investigation. The information contained in this affidavit is submitted for the sole purpose of establishing probable cause for a search warrants mentioned herein. As a result, it does not contain every fact known to me concerning this investigation. Based upon all of the facts set out in the paragraphs below, I allege the following:

1

a.) that the target of this investigation is engaged in criminal activities, namely offenses involving the distribution and possession with intent to distribute controlled substances, in violation of Title 21, United States Code, Section 841(a)(1).

b.) that the evidence sought through the use of a search warrant listed herein will provide investigators with admissible evidence of these crimes needed to establish the full scope and nature of the offenses being investigated; including determining the identity of additional co-conspirators, the sources of supply, transportation methods, locations used to conceal drugs and the assets purchased from the proceeds derived from the sale of drugs; and,

c.) that there is probable cause to believe that such items of evidence, which represent the fruits and instrumentalities of said offenses, will be located within the location specified in this application, which is located within the Middle District of North Carolina.4. Based upon my training and experience, as well as the other sources of information mentioned herein, I know the following:

d.) that drug traffickers maintain books, records, receipts, notes, ledgers, airline tickets, money orders, pagers, scanners, cellular telephones and other instruments and papers relating to transportation, ordering, distribution, and sale of controlled substances. Further, that drug traffickers commonly "front" (provide on consignment) heroin and other controlled substances to their clients; and that the aforementioned books, records, receipts, notes, ledgers, etc. are maintained where the drug traffickers have ready access to them, including on their persons. Cellular telephones and the telephones are of evidentiary value with respect to the identification of subjects who have not yet been positively identified;

2

e.) that it is common for large scale drug traffickers to secrete contraband proceeds of drug sales, and records of drug transactions, in secure locations within their residences, their automobiles, their businesses and/or on their persons for ready access and to conceal these records from law enforcements.

f.) that persons involved in large scale drug trafficking conceal within their residences and businesses large amounts of currency, financial instruments, precious metals, jewelry, and other items of value and/or proceeds of drug transactions; and evidence of financial transactions relating to the obtaining, transferring, secreting, or spending of large sums of money obtained as a result of their participation in drug trafficking activities;

g.) that when drug traffickers amass large cash proceeds from the sale of drugs, the drug traffickers attempt to "legitimize" these profits. To accomplish this goal, drug traffickers utilize domestic banks and their attendant services, i.e., securities, cashier's checks, money drafts, wire transfers, letters of credit, brokerage houses, real estate and also shell transactions, and various business fronts to legitimize their profits made form narcotics trafficking;

h.) that drug traffickers maintain names, addresses or telephone numbers in books, ledgers, electronics storage devices or on papers which reflect the names, nicknames, code names, addresses, and/or the telephone numbers of their criminal associates, and may be used to identify coconspirators who have not been identified or located;

i.) that drug traffickers frequently take or cause to be taken photographs or other video images of themselves, their associates, their property, and other items of evidentiary value

3

and that these traffickers usually maintain these photographs and video images in their possessions;

j.) that the courts have recognized that unexplained wealth is probative of crimes motivated by greed, in particular, drug trafficking and money laundering;

k.) that drug traffickers frequently maintain fictitious identification and other documents which are intended to conceal their identity and avoid detection by law enforcement, including fictitious driver licenses, passports, photo identification cards, and documents relating to fraudulently obtained vehicle titles, registrations, and insurance;

l.) that drug traffickers frequently store and maintain paraphernalia used for the packaging, diluting, weighing and/or distribution of drugs inside their residence; including, but not limited to: scales, plastic bags, diluting agents, tape, plastic wrap, and other items used to conceal drugs during transportation such as chemical and other odor-masking agents;

m.) that individuals involved in the collection, accounting, packaging, transportation and laundering of drug proceeds often maintain paraphernalia used to perform these tasks, including, but not limited to money counting machines, plastic wrap, bulk quantities of rubber bands, and other items used to conceal drug proceeds such as chemical and other odor-masking agents;

n.) that drug traffickers most generally have in their possessions, that is, on their persons, in their vehicles, in their residence and/or in their business, firearms, including but not limited to hand guns, pistols, revolvers, rifles, shotguns, machine guns, and other weapons. Said firearms are used to protect and secure the drug traffickers' property and persons. Such property

4

may include, but not limited to, narcotics, jewelry, narcotics paraphernalia, books, records, and United States currency;

    o) that drug traffickers often place assets in names other than their own to avoid the detection of these assets by government agencies;

    p.) that drug traffickers often place assets in corporate entities in order to avoid the detection of these assets by governmental agencies;

    q.) that even though these assets are in other persons' names, that drug traffickers continue to use these assets and exercise dominion and control over them;

    u.) that these assets are hidden in order to evade the payment of taxes on income and/or prevent forfeiture in event of prosecution;

    r.) that large scale drug traffickers must maintain on hand large amounts of United States currency in order to maintain and finance their ongoing narcotics business;

    4. The subject of this investigation, Brandon Anthony Hattaway is engaged in the offenses involving the distribution and possession with intent to distribute controlled substances, in violation of Title 21, United States Code, Section 841(a)(1). This investigation was initiated in October 2018, and has been ongoing to present. The investigation has thus far included the use of confidential sources, undercover agents, physical surveillance, controlled purchases and interviews. Among the goals of this investigation is to identify all members of the organization, the sources of supply, transportation methods, locations used to conceal drugs and the assets purchased from the proceeds derived from the sale of drugs.

5

## FACTS ESTABLISHING PROBABLE CAUSE

5. On October 24th, 2018, TFO Matthew La Valley received information regarding HATTAWAY from an in-custody source who was being charged with narcotic related offenses. The information provided indicated that HATTAWAY was in possession of an excess of three (3) ounces of Methamphetamine as well as a large quantity of firearms. The source advised that HATTAWAY would sell the source three (3) ounces of methamphetamine at a time and that this purchase was being made at a minimum of once a month.

6. On November 10th, 2018, TFO La Valley received additional information from a Winston-Salem Police Department (WSPD) Officer in reference to HATTAWAY. This officer had conducted an in-custody interview of a subject who was being charged for narcotic and firearm related offenses. This subject advised that HATTAWAY is in possession of an excess of three (3) ounces of heroin and three (3) ounces of methamphetamine. This source also stated that HATTAWAY keeps multiple firearms in his possession at all times and always carries a firearm on his person. Information was also obtained that HATTAWAY rents hotel rooms for prostitutes to utilize for prostitution and drug usage.

7. On November 11th, 2018, TFO La Valley received additional information from a WSPD Officer in reference to HATTAWAY. This officer had conducted an in-custody interview of two subjects individually. One of the subjects in this matter had a warrant for narcotic related offenses. Both subjects advised that HATTAWAY keeps in his possession a large quantity of methamphetamine and heroin.

8. On January 19th, 2019, a detective with Surry County Sheriff's Department contacted HATTAWAY via Facebook Messenger. HATTAWAY's Facebook name is "Brandon Hattaway".

6

During the course of their conversation on Facebook Messenger, HATTAWAY stated, "Yeah I got product", "oz for 6". HATTAWAY then stated his product is "go", which is a street term for methamphetamine. HATTAWAY then also stated "I don't deliver" and provides a meeting location of "Akron Drive" "or university", which are two roads in Winston-Salem, North Carolina. The Surry County detective then asked "Ok u be available next week?" to which HATTAWAY responded "Everyday all day".

9. On January 22nd, 2019, HATTAWAY and the detective resumed their conversation about the sale and purchase of narcotics on Facebook Messenger. The Surry County detective stated "I'm working out of town but my home boy be able to ride up that tomorrow if that's cool. He has the cash ready to roll. U be good?" HATTAWAY responded "Yeah bro". HATTAWAY then provided his cell phone number as being "336-865-6966."

10. On January 24th, 2019, TFO La Valley and members of the Winston-Salem Police Department coordinated an undercover buy of Methamphetamine from HATTAWAY. An undercover detective with the Winston-Salem Police Department made contact with HATTAWAY via the cell phone number he had provided the Surry County Detective and HATTAWAY agreed to sell the undercover detective two ounces of Methamphetamine for $1,200.00. HATTAWAY and the undercover detective agreed to meet at 538 Akron Drive (Wendy's). HATTAWAY and the undercover met the prearranged location, where HATTAWAY sold two ounces of Methamphetamine to the undercover detective for $1,200.00. A lab test confirmed that substance was Methamphetamine.

11. On January 31st, 2019, TFO La Valley and members of the Winston-Salem Police Department coordinated a second undercover buy at methamphetamine from HATTAWAY. An

7

undercover detective with the Winston-Salem Police Department made contact with HATTAWAY and HATTAWAY agreed to sell the undercover detective two ounces of methamphetamine for $1,200.00. HATTAWAY and the undercover detective agreed to meet at 531 Akron Drive (Quality Inn). Surveillance was conducted at 111 Morgan Road, Winston-Salem, North Carolina. During the course of the surveillance, HATTAWAY was observed exiting the residence and entering a passenger car. HATTAWAY then left 111 Morgan Road and met the undercover met the prearranged location, where HATTAWAY sold two ounces of suspected Methamphetamine to the undercover detective for $1,200.00. Immediately after the transaction occurred HATTAWAY returned back to 111 Morgan Road and went back inside the residence. A field test of this substance was inconclusive as to what the substance actually is, and it is probable the substance is counterfeit narcotics. The Surry County detective then reached out to HATTAWAY via Facebook Messenger and stated "WTH bro!!! Thought we was good and you gonna go sale my home boy fake shit!! You gonna make dis right?" HATTAWAY would go on to state "I did it to find out if he was police". Subsequent lab analysis confirmed the substance was not Methamphetamine.

12. On 2/27/2019 a Federal Warrant for arrest was issued against HATTAWAY for the distribution of Methamphetamine, a violation of Title 21, United States Code, Section 841(a)(1).

13. On 2/28/2019 officers with the Winston-Salem Police Department were conducting surveillance at 111 Morgan Road and observed HATTAWAY going in and out of the residence. HATTAWAY was also seen carrying items out of a red pickup truck parked outside the residence and into the home.

14. On March 1st, 2019 TFO La Valley and assisting Police Officers with the Winston-Salem Police Department conducted surveillance on 111 Morgan Road in an effort to locate HATTAWAY

8

who has an active Federal Arrest Warrant charging him with Distribution of Methamphetamine which is a violation of Title 21, United States Code, Section 841(a)(1) and Title 21, United States Code 841(b)(1)(c); During the course of surveillance, officers observed Christopher BOLING and HATTAWAY enter a red in color Nissan Pickup truck. As BOLING entered the truck officers observed that he was in possession of a backpack.

15. Officers conducted a stop of the vehicle was conducted and the two occupants were detained. The driver, Boling, advised officers that he was in possession of methamphetamine in his pants pocket. TFO La Valley located the aforementioned methamphetamine, which appeared to be more than a user amount of methamphetamine, as well as marijuana in Boling's front pants pocket. Also in BOLING's possession of approximately $1740.00 in US Currency. TFO La Valley read BOLING his Miranda Rights, which he waived. BOLING advised that he lives 111 Morgan Road Winston Salem and that HATTAWAY has a bedroom as well. BOLING advised that there was additional marijuana in the home. BOLING provided consent for officers to check the residence for additional occupants, however he stated that none were in the home. No additional occupants were located.

16. A search of the vehicle was conducted. Inside the vehicle officers located two "crack" pipes as well as the aforementioned backpack. Inside the backpack was a large quantity of fake identification cards as well as numerous checks made out to a large number of individuals, none of which are made out to BOLING or HATTAWAY. Based on the above mentioned activity, your AFFIANT has probable cause to believe that additional controlled substances are located inside 111 Morgan Road, Winston-Salem, North Carolina.

17. HATTAWAY has previously been convicted for Possession with the Intent to Sell and Deliver Marijuana and Possession of Firearm by Convicted Felon on 4/22/2009 as well as Second

9

Degree Kidnapping, Robbery with a Dangerous Weapon and Assault with a Deadly Weapon with the Intent to Kill on 1/23/2012.

## CONCLUSION

18. It is believed that the facts alleged herein establish the following:

a.) that the target of this investigation is engaged in criminal activities, namely offenses involving the distribution and possession with intent to distribute Methamphetamine, in violation of Title 21, United States Code, Section 841(a)(1) and Title 21, United States Code 841(b)(1)(c);

b:) that evidence related to possession with intent distribute Methamphetamine and marijuana in violation of Title 21, United States Code, Section 841(a)(1) currently is located within 111 Morgan Road, Winston-Salem, North Carolina.

c.) that the evidence sought through the use of a search warrant listed herein will provide investigators with admissible evidence of these crimes needed to establish the full scope and nature of the offenses being investigated; including determining the identity of members of the organization, the sources of supply, transportation methods, locations used to conceal drugs and the assets purchased from the proceeds derived from the sale of drugs..

_____
Elizabeth Branson
Task Force Officer
Alcohol, Tobacco, Firearms and Explosives

10

SWORN to and SUBSCRIBED before me this 15th day of March, 2019.

_____
L. PATRICK AULD
UNITED STATES MAGISTRATE JUDGE
MIDDLE DISTRICT OF NORTH CAROLINA